**ROOF GARDEN LODGE NO. 98, FRATERNAL ORDER OF POLICE, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1996.

Decided Nov. 27, 1996.

David M. Green, Harrisburg, for Petitioner.

Peter Lassi, Harrisburg, for Respondent.

Before KELLEY and FLAHERTY, JJ., and RODGERS, Senior Judge.

FLAHERTY, Judge.

The Roof Garden Lodge No. 98, Fraternal Order of Police (Union) appeals from an order of the Pennsylvania Labor Relations Board (PLRB) which held that Paint Township (Township) did not engage in unfair labor practices under Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA)[1] and Act 111,[2] by failing to enter into collective bargaining and failing to proceed to arbitration. The PLRB determined that Employer did not have a duty to bargain or arbitrate for fiscal year 1995, because Union did not obtain certification as representative until after Act 111's mandatory time table for instituting bargaining and demanding arbitration had passed.[3]

The issues in this case are: (1) whether the Union's right to collective bargaining and arbitration under Act 111 should be determined as of the date of the filing of its representation petition with the PLRB, and (2) whether the Union sufficiently demonstrated, before the deadline for the commencement of Act 111 collective bargaining, that it was the designated representative of 50% or more of the police employees.

In March or April of 1994, four of the seven police officers employed by the Township made a written request to the Union that it represent them for purposes of collective bargaining. On April 27, 1994, the Union filed a petition for representation with the PLRB.[4] The petition requested "investigation of a question of representation and certification of representative designated or selected for the purpose of collective bargaining by the employes in an appropriate unit." (R.R. 73a.) The unit was described as all full-time and regular part-time employees, including the chief of police. (R.R. 74a.) Enclosed with the petition was a "showing of interest" among 30% or more of the employees in the petitioned for unit. The petition also stated that "[r]equest is made for a twenty-day election pursuant to Section 7(c) of the PLRA." (R.R. 74a.)

Pursuant to an order of the PLRB, an election was conducted on May 16, 1994, and the ballots impounded pursuant to the PLRB's rules. The election order provided that:

[E]ither party questioning the inclusion of any one or more of the employes on the eligibility list may challenge the right to vote at the election....

All ballots will then be impounded until such time as the Board determines the appropriateness of the unit petitioned for or until such time as it will be necessary to open and canvass the ballots.

The chief of police voted in the election and his ballot was challenged by the Township. The Township contended that the chief was a managerial employee and must be excluded from the bargaining unit. Because the parties disputed the composition of the appropriate bargaining unit, a hearing was conducted before the PLRB on May 25, 1994.

On June 22, 1994, the Union sent a letter to the Township requesting commencement of collective bargaining under Act 111 for the contract year beginning January 1, 1995. In a letter dated July 14, 1994, the Township declined the Union's request for bargaining and stated that its request was premature.

---

1. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a) and (e).

2. Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. § 217.1–217.10.

3. Section 3 of Act 111, 43 P.S. § 217.3 provides: Collective bargaining shall begin at least six months before the start of the fiscal year of the political subdivision or of the Commonwealth, as the case may be. Any request for arbitration, as hereinafter provided, shall be made at least 110 days before the start of said fiscal year.

4. Act 111 does not contain detailed provisions for the selection of a bargaining representative. However, our Supreme Court has held that Act 111 is to be read *in para materia* with the PLRA. *Philadelphia Fire Officers Assoc. v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 369 A.2d 259 (1977).

Thereafter, on August 25, 1994, the PLRB's hearing examiner entered an order directing submission of an eligibility list. The order further determined that the chief of police is a managerial employee and therefore must be excluded from the appropriate unit for collective bargaining. The hearing examiner directed the Township to provide a list of names and addresses of the employees in the unit within ten days. On September 2, 1994, the Township sent a list of employees in the unit to the PLRB.

On September 5, 1994, the Union sent a letter to the Township naming its interest arbitrator and requesting that the Township name its arbitrator within five days pursuant to Section 4 of Act 111. On September 9, 1994, the PLRB entered an order directing the opening and canvassing of the impounded ballots. The ballots revealed that 50% or more of the employees in an appropriate unit voted in favor of representation by the Union. Accordingly, the PLRB entered a nisi order of certification on October 3, 1994, certifying the Union as the exclusive representative for all full-time and regular part-time police officers in the Township. No exceptions were filed and the order became absolute and final.

The Union again, in a letter dated October 26, 1994, requested that the Township name its arbitrator. In a letter dated November 15, 1994, the Township stated that it had no duty to proceed to interest arbitration for fiscal year 1995. The Township noted that a demand for arbitration must be made at least 110 days before the start of the fiscal year (the fiscal year being the same as the calendar year) and because the unit was not certified more than 110 days before the start of the fiscal year, there could be no arbitration for fiscal year 1995. Moreover, collective bargaining must begin at least six months before the start of the fiscal year.

In response to the Township's letter, the Union, on December 21, 1994, filed a charge of unfair labor practices with the PLRB alleging that the Township's refusal to proceed to arbitration for fiscal year 1995 was an

unfair labor practice under Section 6(1)(a), (b)[5] and (e) of the PLRA and Act 111.

On July 10, 1995, the hearing examiner entered a proposed decision and order concluding that the Township did not engage in unfair labor practices because "the bargaining representative's certification came, not only too late to meet the mandatory date for the commencement of bargaining, but also came too late to meet the mandatory date for demanding interest arbitration." (R.R. 128a.) The Union filed exceptions to the hearing examiner's proposed decision. Thereafter, on December 12, 1995, the PLRB entered a final order dismissing the Union's exceptions and affirming the hearing examiner's proposed decision and order. This appeal followed.

■ In an appeal from a determination of the PLRB concerning the commission of an unfair labor practice, review by this court is limited to a determination of whether or not the findings of the PLRB are supported by substantial and legally credible evidence, and whether or not the conclusions deduced therefrom are reasonable and not capricious, arbitrary or illegal. *Commonwealth v. Pennsylvania Labor Relations Board,* 64 Pa. Cmwlth. 525, 441 A.2d 470 (1982).

Initially, Union contends that the right to collective bargaining and arbitration under Act 111 should be determined as of the date of its filing of its representation petition.

The Union concedes that it was required to initiate collective bargaining for 1995 on or before June 30, 1994, and to request interest arbitration on or before September 12, 1994. However, when the Union requested bargaining and arbitration, the question of representation, which was raised by the Union's own petition, was still pending before the PLRB. The Union maintains that, although the PLRB did not certify representation until October 3, 1994, because the Union filed its representation petition before the Act 111 deadline, it should be assured of the right to collectively bargain. We disagree.

---

5. In this appeal, Union does not contend that the Township's actions constituted a violation of Section 6(1)(b).

The Union's position that certification should relate back to the date of filing is not supported by authority. In *Delaware County Lodge # 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 75 Pa. Cmwlth. 192, 461 A.2d 1337 (1983), this court stated that "Act 111 requires *timely* adherence to the bargaining schedules in sections 3 and 4 of the Act in order to perfect the right to arbitration." *Id.* 461 A.2d at 1340 (emphasis added). In that case, which the Union fails to distinguish, this court held that the township did not engage in unfair labor practices by refusing to begin arbitration where the certification of the police union did not occur until seven months after the deadline set forth in Act 111 for the commencement of arbitration. As succinctly stated in the PLRB decision, which this court affirmed:

> Unfortunately for the FOP ... certification came too late to permit arbitration for the 1980 calendar year. If the Township had been the cause for the failure to meet the arbitration deadline for 1980, we would view this charge differently. See *International Association of Firefighters v. City of Johnstown*, 468 Pa. 96, 360 A.2d 197 (1976). However, it was because a question of representation had arisen and because the administrative process had not yet run its course in resolving that question that the timetables for arbitration for 1980 could not be met. Accordingly, since the Act 111 deadline for arbitration has now passed, the Township is under no obligation to arbitrate for the calendar year 1980....

*Upper Darby Township*, 11 PPER ¶ 11134 (Final Order 1980), *aff'd sub nom, Delaware County Lodge # 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 75 Pa.Cmwlth. 192, 461 A.2d 1337 (1983).

 Here, the Union failed to obtain certification until after the statutory deadline for bargaining and interest arbitration for the fiscal year at issue. Although the Union sent letters to the Township requesting collective bargaining and arbitration in a theoretically timely fashion, Township was not obligated to participate as certification had not yet occurred.

Next, Union contends that it demonstrated that it was the designated representative of 50% or more of the police employees.

Section 1 of Act 111, 43 P.S. § 217.1, provides in pertinent part:

> Policemen or Firemen employed by a political subdivision of the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers....

The Union maintains that its status as employee representative was established by the written request of four officers, including the chief of police, for such representation, and the "showing of interest" that was attached to its representation petition. Although the Union states in its brief that these documents were submitted to the Township, the record demonstrates that Union's witness conceded that neither document was submitted to the Township. (R.R. 31a–32a, 60a–61a.) Moreover, although the Union alleges that Township stipulated to its appropriateness as representative of its employees, the record belies this assertion. Counsel for both parties stipulated that "Paint Township is an employer within the meaning of the Pennsylvania Labor Relations Act in Act 111, and secondly that the Roof Garden Lodge Number 98 Fraternal Order of Police *is a labor organization within the meaning of those same acts.*" (R.R. 120a, emphasis added.)

 In addition, although an employer can be obligated in the absence of certification to bargain because it has recognized the designated representative as the exclusive representative of its employees, *Commonwealth v. State Conference of State Police Lodges of the Fraternal Order of Police*, 525 Pa. 40, 575 A.2d 94 (1990), such is not the case here. The parties had no bargaining history, nor did the Township recognize the Union as the employee representative.

 Accordingly, because the PLRB did not act with bad faith, fraud, capricious action or abuse its power in refusing to issue an

unfair practice complaint, the decision of the PLRB is affirmed.

### ORDER

NOW, November 27, 1996, the order of the Pennsylvania Labor Relations Board, dated December 12, 1995, Case No. PF–C–94–187–W, is affirmed.